# EXHIBIT A

BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**In re** Tasigna Product Liability Litigation        MDL-_____

**MOTION OF PLAINTIFF FOR TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), Plaintiff Allen Garland[1] ("Movant") respectfully requests transfer and coordination for pretrial purposes all currently filed cases listed in the annexed Schedule of Actions ("the Actions"), as well as any cases subsequently filed in a United States District Court involving common questions of fact ("tag-along actions"), for coordinated or consolidated pretrial proceedings in the United States District Court for the Southern District of Illinois.

The Actions consist of 18 pending lawsuits in 12 different United States District Courts alleging similar wrongful conduct against Defendant Novartis Pharmaceuticals Corporation relating to its pharmaceutical drug, Tasigna. Transfer for pretrial consolidation and coordination is proper and necessary for the following reasons:

1.      The causes of actions all have near identical products liability claims related to Tasigna—namely that (1) Tasigna causes accelerated and severe atherosclerosis-related diseases, including peripheral vascular disease, coronary artery disease, and cerebral artery diseases, (2) Novartis knew and intentionally failed to warn of these risks, and (3) as proximate cause,

---

[1] Case captioned: *Allen Garland v. Novartis Pharmaceuticals Corporation*, 3:20-cv-00269-JPG (S.D. Ill.).

1

Plaintiffs suffered severe atherosclerotic injuries, including amputations, heart attacks, and strokes.

2.      There are currently 18 separate actions pending in 12 federal courts, including Illinois, Florida, New Mexico, Connecticut, New York, New Jersey, North Dakota, Minnesota, North Carolina, Washington, Wisconsin, Arkansas, and Maryland.  Movant anticipates that multiple additional complaints will be filed.

3.      Each of the Actions arise out of the same or similar nucleus of operative facts, and they arise out of the same or similar alleged wrongful conduct.

4.      Each of the Actions will involve the resolution of the same or similar questions of fact and law, as they all arise from Defendant's same wrongful conduct.

5.      Discovery conducted in each of the Actions will be substantially similar and will involve the same documents and witnesses, because each action arises from the same or similar nucleus of operative facts.  Therefore, no prejudice or inconvenience will result from the transfer, coordination, and consolidation of the Actions to the Southern District of Illinois.

6.      Further, transfer and consolidation will allow the parties to better harmonize the schedules of the Actions with nearly 100 similar Tasigna products liability cases filed in New Jersey, which are about to be consolidated pursuant to the relevant New Jersey state court procedures, thereby maximizing efficiencies in the resolution of the global Tasigna products liability litigation.

7.      In further support of this motion, Movant incorporates its supporting brief and exhibits as if fully stated herein.

Accordingly, Movant respectfully requests that the Actions be transferred to the Southern District of Illinois.

Dated: April 14, 2021 Respectfully Submitted,

By: /s/ Richard M. Elias
Richard M. Elias
Todd Friedman
Elias LLC
231 S. Bemiston, Suite 800
St. Louis, MO 63105
P: 314-391-6821
relias@eliasllc.com
tfriedman@eliasllc.com

/s/ James G. Onder
James G. Onder, #0620044
Lawana S. Wichmann #6282208
Onder Law
110 E. Lockwood, 2nd Floor
St. Louis, MO 63119
onder@onderlaw.com
wichmann@onderlaw.com
(314) 963-9000 telephone
(314) 963-1700 facsimile

*Attorneys for Allen Garland, as well as Bruce Becker, Roger Burke, Debra Craig, Annette Schimming, Estate of Gerald Mielke, Ronald Tonge, and Michael Witt*

BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**In re** Tasigna Product Liability Litigation          MDL-_____

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I.      PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("Panel"), Plaintiff Allen Garland[1] ("Movant") respectfully submits this brief in support of his motion to transfer and centralize all currently filed cases listed in the annexed Schedule of Actions ("the Actions"), as well as any cases subsequently filed in a United States District Court involving common questions of fact ("tag-along actions"), for coordinated or consolidated pretrial proceedings in the United States District Court for the Southern District of Illinois.

Movant brought suit against Defendant Novartis Pharmaceuticals Corporation ("Novartis") to recover for injuries resulting from Novartis's intentional failure to timely and adequately warn of dangerous and known risks associated with Tasigna —a Novartis-manufactured prescription medication for treatment of chronic myeloid leukemia ("CML"). Specifically, Novartis failed to warn of risks that Tasigna causes several forms of severe, accelerated, and irreversible atherosclerotic-related conditions—i.e., the narrowing and hardening of arteries delivering blood to the arms, legs, heart, and brain. Despite warning doctors

---

[1] Case captioned: *Allen Garland v. Novartis Pharmaceuticals Corporation*, 3:20-cv-00269-JPG (S.D. Ill.).

1

and patients in Canada of the risks of atherosclerotic-related conditions, Novartis concealed, and continues to conceal, their knowledge of Tasigna's unreasonably dangerous risks from Plaintiffs, other consumers, and the medical community. Instead, Novartis aggressively marketed and promoted Tasigna as the new standard of care in CML treatment.

While Novartis updated the Prescribing Information ("PI") for Tasigna in January 2014 to include a warning entitled "Cardiac and Vascular Events," this warning was and remains wholly inadequate. Indeed, unlike the Canadian product labeling, the PI in the United States, to this day, does not warn that Tasigna can cause severe, rapidly evolving vascular disease often involving more than one site. It also does not warn that the nature of the disease caused by Tasigna could be so severe it could require repeat revascularization procedures, and ultimately result in serious complications such as limb necrosis and amputations. Further, in contrast to the Canadian warning, this warning was not added as a "black box warning," the most prominent warning placed on the PI to properly and adequately advise physicians of significant risks. Finally, unlike it did in Canada, Novartis did not send a "dear doctor letter" advising U.S. doctors of the atherosclerotic risks, which is also one of the most effective means of communicating the nature of the risk.

After beginning treatment with Tasigna and as a direct result of Novartis's actions and inaction, Movant was diagnosed with severe peripheral arterial disease– ultimately resulting in a below the knee amputation. Movant seek damages including, but not limited to, pain and suffering, emotional distress, loss of enjoyment of life, medical expenses, out of pocket expenses, lost earnings, other economic and non-economic damages, and punitive damages from Novartis.

To date, numerous cases have been filed asserting similar claims on behalf of others who have suffered significant, life-changing atherosclerotic-related injuries due to their use of Tasigna. This includes almost 100 cases that have been filed in New Jersey state court on behalf of individuals who have sustained similar injuries and allege nearly identical wrongful conduct as alleged in the Actions. Importantly, the New Jersey state court cases are now in the process of being coordinated, which both parties agree is necessary, for similar reasons set forth by Movant on this petition. Additional cases are also expected to be filed nationwide.[2] Based on the numerous common questions of fact involved, the compelling need to establish uniform and consistent standards in conducting pretrial discovery and motion practice, and because the Southern District of Illinois is well suited for these proceedings, Movant respectfully requests coordinated proceedings be maintained there.

## II. BACKGROUND

This Motion to Transfer involves 18 federal actions pending in 12 different jurisdictions across the United States, asserting common factual allegations and involving overlapping claims and legal issues. Movant expects additional actions to be filed in various federal district courts alleging similar claims.

### A. Plaintiffs

The various Plaintiffs in this litigation have all filed civil actions arising from injuries caused by Novartis's Tasigna product and Novartis's failure to timely and adequately warn of the risk of severe, accelerated, and irreversible forms of atherosclerotic-related conditions. Plaintiffs are people (or their wrongful death beneficiaries) who have been diagnosed with atherosclerotic-

---

[2] The undersigned law firms represent and are investigating Tasigna injury claims on behalf of over 300 additional, potential Plaintiffs.

3

related injuries—including peripheral vascular disease, peripheral artery disease, and cardiovascular disease—resulting in heart attacks, limb amputations, and strokes as a result of using Tasigna. Each of the pending federal cases presents a common core set of facts, in that each alleges: (1) that Plaintiffs suffered atherosclerotic-related injuries after using Tasigna; (2) that Novartis failed to timely and adequately warn of this potential injury; (3) injuries and damages arising from Novartis' wrongful conduct; and (4) the same or similar conduct by Novartis.

Plaintiffs in the pending federal actions are geographically diverse, residing in 13 different states across the country: Illinois, Florida, New Mexico, Connecticut, New York, New Jersey, North Dakota, Minnesota, North Carolina, Washington, Wisconsin, Arkansas, and Maryland.

**B.     Defendant**

Defendant Novartis is a New Jersey corporation with its principal place of business in the State of New Jersey. Novartis has been responsible for the development, testing, regulatory approval, marketing and sale of Tasigna in the United States at all times relevant to the Actions. Novartis is the only party who has been named as a defendant in every one of these cases.

**C.     Status of Federal Actions and Failed Attempts at Informal Coordination**

The Actions were filed beginning in March 2020, at the infancy of the COVID-19 pandemic. At the same time, a number of actions were similarly filed in New Jersey state court alleging nearly identical injuries and wrongful conduct by Novartis. Each of the individual Actions is proceeding under its own case management order, with varying deadlines for fact discovery, expert discovery, and dispositive motions. Although several cases have been pending for approximately one year, the discovery in those cases remains in the very nascent stages.

Because of the obvious overlap of issues, particularly issues related to Novartis's corporate conduct, the parties have attempted to informally coordinate discovery. Because of the relatively limited number of firms involved, the parties were initially optimistic that informal coordination across these actions could be accomplished. In fact, Novartis has insisted that such coordination occur, stating that it will only make one document production for all cases, and will not negotiate Novartis's corporate discovery on a case-by-case basis. However, when confronted about how the parties would resolve disputes across these cases and in response to Plaintiff's suggestion that a special master be considered, Novartis flatly rejected that proposal, instead suggesting the parties could simply bring disputes to the judge of their choice.

Despite the passage of almost a year in some cases, Novartis has yet to make a substantial production of its corporate documents.[3] This delay has already and will continue to impact all current schedules in the Actions. Indeed, the parties have already had to extend expert deadlines in the Movant's case from January 2021 to May 2021 (*see* Doc. # 30) and will likely need to extend that date even further. The parties are currently negotiating, or have already agreed to, similar extensions in cases pending in the Middle District of Florida and the District of Maryland.

In contrast, Plaintiffs in all of the actions have answered written discovery, provided medical records in their possession, and provided releases for records from all relevant medical

---

[3] Nearly all of the documents produced by Novartis to date come from a re-production of a prior document production that it made in a now-concluded case, *Lauris v. Novartis Pharmaceuticals Corp.,* 1:16-cv-00393 (E.D. Cal.). This production, however, was made with constraints in custodians, search terms, and, more importantly, time frames. Because the decedent's passing occurred in November 2013, the court limited the timeframe of discovery to April 2014. This timeframe is not adequate for a vast majority of the newer actions, including this one, because the dates of use and injury extend well beyond April 2014. Therefore, Plaintiffs cannot properly litigate key issues in this case without a substantial production that incorporates the proper scope. Novartis has also updated their regulatory file production.

5

providers, which Novartis has collected. Novartis has used this disparity in discovery production to its full advantage. It has, without conferring with Plaintiffs, unilaterally noticed depositions of several Plaintiffs in the Actions, including Plaintiff Garland, and several medical providers in these cases, including prescribing physicians—depositions that cannot occur without a production of the custodial files of Novartis's sales representatives that called on these physicians. As a result, Plaintiffs in the various actions will likely be forced to file various motions to quash subpoenas or for protective orders in a number of different jurisdictions, burdening the courts with discovery disputes that would be obviated if the cases were consolidated and subject to a global discovery schedule.

### D. Status of the New Jersey State Court Cases

As discussed, there are nearly 100 similar cases filed in New Jersey state court which Novartis agrees requires some form of coordination in order to be effectively managed. Each of these cases is currently proceeding under its own case management orders, but that will soon change. On January 19, 2021, Plaintiffs applied to the New Jersey Supreme Court to consolidate the cases as a Multi-County Litigation ("MCL") under N.J. Ct. R. 4:38A. *See* Exhibit A. This application is fully briefed. Given the number of cases and identity of issues, the application is almost certain to be granted.

Even if it is not, Novartis has moved, in the alternative, to have the cases consolidated in Morris County, New Jersey, where all but a handful of the cases are pending—a motion which, in the unlikely event the MCL is not granted, Plaintiffs will not oppose. In support of its motion, Novartis argues that consolidation is proper as the cases involve common questions of law and fact and it would be in the best interest of efficiency, convenience, and fairness, just as Movant is

6

arguing here. *See* Exhibit B at 6 - 7. Once these cases are consolidated, a new global case management order will issue, setting new deadlines for all discovery.

### III. ARGUMENT

The Actions meet the requirements for transfer pursuant to 28 U.S.C. § 1407. Section 1407 authorizes the transfer of two or more civil actions, pending in different districts, for coordinated or consolidated pretrial proceedings, when: (1) the "actions involv[e] one or more common questions of fact"; (2) transfer "will be for the convenience of parties and witnesses"; and (3) transfer "will promote the just and efficient conduct of such actions." Each element is met here.

"The multidistrict litigation statute, 28 U.S.C. § 1407, was enacted as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different districts." *Royster v. Food Lion (In re Food Lion),* 73 F.3d 528, 531-32 (4th Cir. 1996). Two critical goals of Section 1407 are to promote efficiency and consistency. *Illinois Municipal Retirement Fund v. Citigroup, Inc.,* 391 F.3d 844, 852 (7th Cir. 2004). The statute "was [also] meant to 'assure uniform and expeditious treatment in the pretrial procedures in multidistrict litigation'" and [w]ithout it, 'conflicting pretrial discovery demands for documents and witnesses might 'disrupt the functions of the Federal courts.'" *In re Phenylpropanolamine Prod. Liab. Litig.,* 460 F.3d 1217, 1230 (9th Cir. 2006) (quoting H.R. Rep. No. 1130, 90th Cong., 2d Sess. 1 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1899). The alternative to appropriate transfer is "multiplied delay, confusion, conflict, inordinate expense and inefficiency," *Id.* (quoting *In re Plumbing Fixture Cases,* 298 F. Supp. 484, 495 (J.P.M.L. 1968)).

Without question, these actions assert overlapping claims, based on common factual allegations, and involve common legal theories. Consolidated pretrial treatment under Section 1407 will assist the parties and the courts in avoiding duplicative and conflicting rulings on the common issues in dispute. Granting this motion will also serve the convenience of the parties and witnesses and promote the just and efficient resolution of the litigation. Perhaps more importantly, it will also serve to benefit the various federal district courts, already dealing with a backlog of cases and other effects brough on by the coronavirus pandemic. Indeed, while the parties have avoided burdening the courts with significant discovery disputes, however, given the current landscape described above, that will soon come to an end.

Finally, the cases are well-suited for coordination, as this Panel has frequently ordered the multidistrict transfer of pharmaceutical and other product liability cases. *See in re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2100 (J.P.M.L. Oct. 1, 2009); *In re: Pradaxa (Dabigatran Etexilate) Products liability Litigation,* MDL No. 2385 (J.P.M.L. Aug. 8, 2012); *In re Fluoroquinolone Prods. Liab. Litig.,* MDL No. 2642 (J.P.M.L. Aug. 17, 2015*); In re: Abilify (Aripiprazole) Prods. Liab. Litig.* (J.P.M.L. 2016); *In re: Valsartan Prods. Liab. Litig.,* MDL No. 2875 (J.P.M.L. 2019*); In re: Zantac (Ranitidine) Prods. Liab. Litig*., MDL 2924 (J.P.M.L. 2020); *In re: Elmiron (Pentosan Polysulfate Sodium) Prods. Liab. Litig*., MDL No. 2973 (J.P.M.L. 2020).

### A. These Cases Involve Common Questions of Fact

The first element of the Section 1407 transfer analysis is whether there are one or more common questions of fact. *See* 28 U.S.C. § 1407. The statute, however, does not require a "complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prods. Liab. Litig.,* 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004). Here, there are

8

multiple common issues among the Actions. Each complaint alleges that Novartis misrepresented the safety of Tasigna. Common questions of fact among the actions include, at minimum:

    a.    The actual and ultimate causes of Plaintiffs' atherosclerotic injuries;

    b.    Novartis' knowledge regarding atherosclerotic injuries resulting from Tasigna use; and

    c.    The facts surrounding Novartis' failure to timely and adequately warn of atherosclerotic injuries.

Because the factual assertions in each of the actions are nearly identical, and many important legal issues in dispute will also be nearly identical, transfer and coordination or consolidation of these actions is highly appropriate. *See In re Factor VIII or IX Concentrate Blood Prods. Prod. Liab. Litig.,* 853 F. Supp. 454, 455 (J.P.M.L. 1993).

    **B.**    **Transfer and Consolidation in the Southern District of Illinois Will Promote the Just and Efficient Conduct of These Actions and Serve the Convenience of the Parties.**

The Panel recognizes multiple factors as informing whether the just and efficient conduct of a litigation will be advanced by transfer, including: (1) avoidance of conflicting rulings in various cases; (2) prevention of duplication of discovery on common issues; (3) avoidance of conflicting and duplicative pretrial conferences; (4) advancing judicial economy; and (5) reducing the burden on the parties by allowing division of workload among several attorneys. *See, e.g., In re: Endangered Species Act Section 4 Deadline Litig.,* 716 F.Supp.2d 1369, 1369 (J.P.M.L. 2010); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation,* 424 F. Supp. 504, 506 (J.P.M.L. 1976). All these factors will be advanced by transfer here.

At present, there are numerous cases filed across the country and there will certainly be many more. Under the *status quo,* multiple different federal judges will be ruling on the common

factual and legal issues presented in these cases. The presence of multiple counsel, plaintiffs, and courts currently involved in this litigation, with the anticipation of more, creates a clear risk of conflicting rulings, with the potential to generate significant confusion and conflict among the parties, as well as inconsistent obligations on all parties. To date, the parties have been unable to solve this issue, and Novartis's proposal that the parties simply bring disputes to a judge or judges of their choosing only highlights the problem further. Indeed, as indicated above, Novartis has already stated that disputes should be handled by bringing them in the court or courts of the moving party's choosing. This includes the possibility of bringing the dispute in multiple courts with the hope that if enough adverse rulings are rendered one party will eventually give in.

By contrast, a single MDL judge coordinating pretrial discovery and issuing a single, final ruling on pretrial motions will help reduce witness inconvenience, the cumulative burden on the courts, the litigation's overall expense, as well as minimize the potential for conflicting rulings. *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.,* 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) ("Issues concerning the development, manufacture, regulatory approval, labeling, and marketing of Xarelto thus are common to all actions. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and judiciary."); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.,* 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) ("Centralization will . . . prevent inconsistent pretrial rulings (on Daubert issues and other matters), and conserve the resources of the parties, their counsel, and the judiciary."); *Bott v. Delphi Auto. LLP (In re Auto. Wire Harness Sys. Antitrust Litig.),* 844 F. Supp. 2d 1367, 1367 (J.P.M.L. 2012) (same). Accordingly, transfer to a single district court is appropriate for the just and efficient resolution of these cases.

The convenience of the parties and prevention of duplicative discovery also favor transfer. *See* 28 U.S.C. 1407. None of the pending cases have progressed to the point where significant efficiencies will be forfeited through transfer to an MDL proceeding. In fact, delays inherent to the current landscape, where the Actions are filed in various different district courts, have rendered progress extremely difficult. This Panel has routinely recognized that consolidating litigation in one court benefits *both* Plaintiffs and defendants. For example, pretrial transfer would reduce discovery delays and costs for Plaintiffs, and permit all Plaintiffs' counsel to coordinate efforts and share the pretrial workload. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 173 F.Supp.2d 1377, 1379 (J.P.M.L. 2001) ("And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned."); *In re Baldwin-United Corp. Litigation,* 582 F. Supp. 739, 741 (J.P.M.L. 1984) (same). As for Novartis, expert depositions and the depositions of its corporate witnesses will be coordinated, document production will be centralized, and travel for its current and former employees will be minimized, since they will only have to appear in one consolidated litigation, rather than in multiple matters around the country.

While Movant anticipates there will be additional case filings, the current level of litigation with 18 cases pending in 12 different judicial districts would clearly benefit from transfer and coordinated proceedings, given the allegations contained in the complaints. *See In re First Nat'l Collection Bureau, Inc. Tel. Consumer Prof. Act (TCPA) Litig.,* 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("Although there are relatively few parties and actions at present, efficiencies can be gained from having these actions proceed in a single district," such as

11

"eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary."); *In re Hyundai & Kia Fuel Econ. Litig.,* 572 F.Supp.2nd 1380, 1381 (J.P.M.L. 2008) (creating multidistrict litigation for less than 15 pending actions); *In re: Zurn Pex Plumbing Products Liability Litigation*, 572 F.Supp.2d 380, 1381 (J.P.M.L. 2008) (granting transfer and consolidation of three cases and six potential tag-alongs because of the "overlapping and, often, nearly identical factual allegations that will likely require duplicative discovery and motion practice.").

Finally, and perhaps most importantly, centralizing these actions under Section 1407 will ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary. *In re Amoxicillin Patent & Antitrust Litig.,* 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases "[b]ecause of the presence of complex factual questions and the strong likelihood that discovery concerning these questions will be both complicated and time-consuming, we rule that transfer under Section 1407 is appropriate at the present time even though only three actions are presently involved.")

In sum, transfer of these actions would serve the convenience of the parties and the court, saving significant time, effort, and money.

### C. The Parties' Attempts at Informal Coordination Have Failed

As discussed above, the parties' attempts to coordinate informally have failed. Despite many months of negotiation, Novartis has yet to make the fulsome production necessary to litigate key issues in all of the Actions. Because of this delay, the parties have already been forced to extend discovery schedules in certain cases, including this one, and are seeking to do so in multiple others. Given the current state of discovery, motions to compel are likely to be filed in the near future. This presents the potential problem of being forced to brief the same issue in

multiple jurisdictions. This is especially true here, where cases are filed across multiple districts and in several different circuits. Indeed, if an adverse ruling is given in one case, but governing circuit law suggests a better ruling may be obtained in another, it would be prejudicial to the Plaintiff residing in the more favorable circuit to accept the adverse ruling rather than try for a better one.

Meanwhile, Novartis is using the delay to its full advantage, seeking to force dozens of depositions, including those of prescribing physicians. This will also result in multiple motions for protective orders, which, again, will almost certainly result in inconsistent rulings.

In short, the parties have tried to coordinate this case without consolidation, and those efforts have failed, leading to the very fractious discovery disputes the multi-district litigation statute was designed to avoid.

### D. Transfer and Consolidation Will Harmonize the Global Tasigna Litigation

Movant seeks to transfer and consolidate this case at a time when nearly 100 New Jersey state court cases are being consolidated. Indeed, after approximately one year with little or no progress in discovery and the filed cases spread across multiple judges, Novartis has submitted a motion to consolidate the cases in a single county before one judge touting efficiency, convenience, and fairness as the main factors in support of consolidation. While these cases do not necessarily bear directly on schedules of these Actions, consolidation of the Actions will allow the parties to harmonize the litigation and maximize efficiencies. The parties will have the opportunity to negotiate similar protocols and deadlines for global discovery issues, including Novartis's corporate production and disclosure of global experts, such as regulatory experts and experts on general causation. Consolidation of these Actions into an MDL will also provide a single point of contact for the state court of judge to effectuate joint state-federal coordination.

Given that cases are about to be consolidated in New Jersey state court, it would be incongruous and inefficient for dozens of federal cases to proceed in scattershot fashion.

**E. Plaintiff Respectfully Suggests Transfer of These Actions to The Southern District of Illinois**

In determining the appropriate transferee venue, this Panel considers the ability of a district to provide an efficient ruling over the large number of cases expected to be filed. The Southern District of Illinois has the resources to provide an efficient disposition of these cases as, upon information and belief, there are no MDLs which are currently pending in this district.

Although many district courts may be suited for transfer, the Southern District of Illinois possesses unique characteristics which set it apart from others, considering the relative convenience of the parties and witnesses involved. The Southern District of Illinois, centrally located, would permit convenient travel for the parties and counsel involved, as compared to travel to the East or West Coast. The courts of the Southern District are easily reached as they are served by major air carriers from across the country.

Additionally, the Southern District of Illinois is well suited to products liability litigation. It has been chosen as the appropriate transferee district for *Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2100 as well as *Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385.

**IV. CONCLUSION**

For the foregoing reasons and those articulated in his attendant motion, Movant respectfully requests that the Panel transfer this case and all related federal actions, along with any future cases, to the United States District Court for the Southern District of Illinois for consolidation.


Dated: April 14, 2021  Respectfully Submitted,

By: /s/ Richard M. Elias
Richard M. Elias
Todd Friedman
Elias LLC
231 S. Bemiston, Suite 800
St. Louis, MO 63105
P: 314-391-6821
relias@eliasllc.com
tfriedman@eliasllc.com

/s/ James G. Onder
Onder Law
James G. Onder, #0620044
Lawana S. Wichmann #6282208
110 E. Lockwood, 2nd Floor
St. Louis, MO 63119
onder@onderlaw.com
wichmann@onderlaw.com
(314) 963-9000 telephone
(314) 963-1700 facsimile

*Attorneys for Allen Garland, as well as Bruce Becker, Roger Burke, Debra Craig, Annette Schimming, Estate of Gerald Mielke, Ronald Tonge, and Michael Witt*